**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 9:16-CV-80020-WPD**

JANICE PARSON,

Plaintiff,

vs.

MIDLAND FUNDING, LLC,

Defendant.
_______________________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Local Rule 7.1, Plaintiff, JANICE PARSON, hereby responds to Defendant, MIDLAND FUNDING, LLC's ("Midland") Motion to Dismiss [ECF No. 10], pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully requests this Honorable Court enter an Order denying the relief sought by Defendants. In support of her response, Plaintiff submits the incorporated memorandum of law.

## I. INTRODUCTION AND BACKGROUND

The action before this Court arose from Midland's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"). The facts are largely not in dispute. In her one count Complaint, Ms. Parson alleged that Midland is a debt collector who attempted to collect a credit card debt from her by filing a lawsuit against her in the Circuit Court in and for Palm Beach County ("The lawsuit"). [Compl., ¶¶11-12]. However, Ms. Parson did not sign the contract that served the basis for the Lawsuit in Palm Beach County and Ms. Parson did not reside in Palm Beach County at the time the Lawsuit was filed. [Id., ¶¶14-15].

Ms. Parson filed the instant action alleging Midland violated 15 U.S.C. §1692(i) which prohibited Midland from filing the Lawsuit in Palm Beach County. Midland filed a motion to dismiss arguing that "[a] §1692i violation does not occur until the debtor is served with the complaint". [D.E. 10 at 3]. However, Midland seeks to impermissibly change the language of §1692i which discusses "bringing" any legal action and not "serving" any legal action.

## II. MEMORANDUM OF LAW

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court's review is "limited to the four corners of the complaint." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (quoting St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002)). Additionally, a court must view the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. Hishon v. King v. Spalding, 467 U.S. 69 (1984); Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043 (11th Cir. 2007).

Once a court identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth, the court must next determine whether the well-pled facts state a claim to relief that is "plausible on its face". Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955). Plaintiff has "well-pled" the facts that gave rise to his Amended Complaint. The facts supporting each element of the cause of action are pled. Thus, Plaintiff has stated a valid cause of action.

### A. Plaintiff has Established a *prima facie* Violation of the FDCPA.

In enacting the FDCPA, Congress sought "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Brown v. Budget Rent-A-Car Sys., Inc.,

119 F.3d 922, 924 (11th Cir. 1997) (per curiam). The FDCPA does not ordinarily require proof of an intentional violation and, as a result, is described by some as a strict liability statute. *See* 15 U.S.C. § 1692k; LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193-1194 (11th Cir. 2010) (*citing* Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2nd Cir. 2010)). Available remedies under the FDCPA include actual damages, the potential for additional damages up to $1,000 subject to the Court's discretion, and reasonable costs and attorney's fees. 15 U.S.C. § 1692k(a)(1)-(3).

In order to establish a prima facie case against a party for violations of the FDCPA, Plaintiff must demonstrate: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector under the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA. Sanz v. Fernandez, 633 F.Supp.2d 1356, 1359 (S.D. Fla. 2009). So long as a transaction creates an obligation to pay, a debt is created for purposes of the FDCPA. Brown, 119 F.3d at 924. Additionally, attorneys and law firms may be considered "debt collectors" as that term is defined by the FDCPA. Heintz v. Jenkins, 514 U.S. 291 (1995).

Here, the first two elements have not been put into contention by Midland. Midlan solely challenges that it has engaged in an act prohibited by the FDCPA. §1692i governs where a debt collector may file a lawsuit against a debtor and states:

> (a) Venue Any debt collector who brings any legal action on a debt against any consumer shall—
>
> (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
>
> (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—
>
> (A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

In the instant matter, the following facts have been alleged: (1) the debt at issue was incurred for personal, family, or household purposes [D.E. 1, ¶11]; (2) Defendant filed a lawsuit attempting to collect on an unpaid credit card from Plaintiff [D.E. 1, ¶ 12]; and (3) Defendant filed the lawsuit in the wrong county in violation of Section 1692i of the FDCPA [D.E. 1, ¶¶ 17-19]. In sum, Plaintiff has established her prima facie burden for establishing a violation of the FDCPA. Defendant has not challenged that it is a debt collector that was attempting to collect a debt from Plaintiff by filing the lawsuit.

The sole question before this Court is whether a violation of §1692i occurs when a lawsuit is filed in the wrong venue or when said lawsuit is served upon the Plaintiff. As will be shown below, the statute and case law are clear that the violation occurs upon the filing of the complaint in the wrong jurisdiction. The case law relied upon by Midland deals with when the statute of limitation begins to run.

**B. The Filing of the Lawsuit and not Service triggers §1692i**

This Court is now asked to determine what the word 'bring' in "brings any legal action" means. It is axiomatic that this Court begins its construction "where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000). In construing a statutory provision, "[w]e do not start from the premise that [the statutory] language is imprecise." United States v. LaBonte, 520 U.S. 751, 757, (1997). Further, "in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and

means in a statute what it says there. Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992).

"We will, as we must, "presume that Congress said what it meant and meant what it said." United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc). Here, the word "bring" clearly means the filing of the Lawsuit. "The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute." Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1167 (l1th Cir. 2003) (quotation marks omitted). However, if there was any doubt as to what the word 'bring' means—the Eleventh Circuit Court of Appeals addressed this in Harris.

> The standard legal dictionary answers that question as follows: "To 'bring' an action or suit has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit." Black's Law Dictionary 192 (6th ed.1990); *accord* 5 Words and Phrases, "Begun" (1968) (defining "begun" or "brought" to mean "commenced"). That is the generally accepted meaning of the term, and this is not the first time we have had occasion to say so. In *EEOC v. Eastern Airlines, Inc.*, 736 F.2d 635, 639 (11th Cir.1984), we were called upon to interpret section 7(c)(1) of the Age Discrimination in Employment Act, which provides that the right of any person "to bring" a private action under that statute terminates upon the commencement of an enforcement action by the EEOC. The defendant in the case argued that "to bring" means filing *or* continuing a lawsuit, so that once the EEOC starts an enforcement action, section 7(c)(1) bars a private plaintiff from continuing a previously filed lawsuit. *See id.* at 639. We rejected that position, agreeing instead with the Second Circuit's decision in *Burns v. Equitable Life Assurance Soc. of the U.S.*, 696 F.2d 21, 23 (2d Cir.1982), that "the words 'to bring' mean only 'to commence,' rather than to 'commence or maintain.' " *See EEOC,* 736 F.3d at 639–40. The same is true here.
>
> The Supreme Court has reached an identical conclusion about the meaning of "bring" and "brought." *Hoffman v. Blaski,* 363 U.S.

335, 341, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960), involved 28 U.S.C. § 1404(a), the venue provision which permits the transfer of "any civil action to any other district or division where it might have been brought." The argument was made that because the statute is remedial, the words " 'where it might have been brought' should be held to relate not only to the time of the bringing of the action, but also to the time of the transfer." *See id.* at 342, 80 S.Ct. at 1089. The Supreme Court rejected that position, in large part because the statutory language was "unambiguous, direct [and] clear," *id.* at 343, 80 S.Ct. at 1089, and interpreting "might have been brought" to refer to anything other than the time the lawsuit was filed would "do violence to the plain words" of the statute. *Id.* at 344, 80 S.Ct. at 1090. The same is true here.

This is not new ground. The Supreme Court first broke it one hundred and seventeen years ago, when it had occasion to apply a legislative requirement that a lawsuit be "brought within 90 days after the decision" of a government official. The Court said this:

A suit is brought when in law it is commenced, and we see no significance in the fact that in the legislation of congress on the subject of limitations the word "commenced" is sometimes used, and at other times the word "brought." In this connection the two words evidently mean the same thing, and are used interchangeably. *Goldenberg v. Murphy,* 108 U.S. 162, 163, 2 S.Ct. 388, 389, 27 L.Ed. 686 (1883). The same is true here: "brought" means "commenced."

The decisions we have laid out show that for more than a century before the enactment of the PLRA, it was well established that "brought" and "bring" refer to the filing or commencement of a lawsuit, not to its continuation. This long history of established meaning is important, because we readily presume that Congress knows the settled legal definition of the words it uses, and uses them in the settled sense. *See Commissioner v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 159, 113 S.Ct. 2006, 2011–12, 124 L.Ed.2d 71 (1993) (explaining that Congress is presumed to be aware of settled judicial and administrative interpretations of words when it writes them into a statute); *Alabama v. Tennessee Valley Authority,* 636 F.2d 1061, 1065 (5th Cir.1981) ("When a word has a judicially settled meaning, it is presumed that Congress,

> by using that word in a statute, used it in that accepted sense.") (citation omitted).

Harris v. Garner, 216 F.3d 970, 973-74 (11th Cir. 2000)

In its motion to dismiss, Midland relies heavily on the Fifth Circuit's opinion in Serna v. Law Office of Joseph Onwuteaka, P.C., 732 F.3d 440 (5th Cir. 2013). In Serna, the question before the court was specifically as to when the statute of limitation began to run for a claim under §1692(i). There, the lower court had dismissed the case because it was filed more than a year after the underlying debt-collection suit was filed. Id. The Fifth Circuit reversed, finding that "an alleged debtor does not suffer any injury until he becomes aware of a debt-collection suit and is forced to respond in a distant forum." Id. at 446. This simply cannot stand. Just because Ms. Parson wasn't actually served with the Lawsuit, doesn't in any way mean she wasn't injured by it. So much so that she sought out a lawyer to help her out.

While not in the Complaint, Ms. Parsons—who resides in Texas—was reached out to by a process server as many process servers do when they can't serve a lawsuit. To find that only personal service would be the type of injury that §a692i was designed to protect against flies in the face of logic and the intent behind the FDCPA. Again, here, Ms. Parson was so concerned about the Lawsuit—she reached out to an attorney in the area for assistance. Serna was an attempt to protect the consumer by extending the statute of limitations to begin to run after service.

This Court had a chance to examine Serna in Archer v. Aldridge Connors, LLP, 998 F. Supp. 2d 1360, 1364 (S.D. Fla. 2014). There, the undersigned argued that the statute of limitations should begin to run when the consumer found about the lawsuit and not upon the

filing. This Court agreed, largely in part "[b]ecause the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer." Id.

Archer is not applicable here in any event as it dealt with §1692e which prohibits a misrepresentation to the borrower. The misrepresentation occurred once the borrower was provided with the illicit document. Here, notice is not the issue. Rather, the actual filing is what gives rise to the violation. In Archer as well as the other cases cited, the operative question was regarding the discovery rule as related to tolling the statute of limitations.

Plaintiff submits that Serna was not intended to be used in the manner in which Midland uses it. Moreover, other circuits have held to the contrary. Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997)("We hold that the statute of limitations began to run on the filing of the complaint in the Municipal Court.") The Nass court pointed out that ["filing a complaint is the debt collector's last opportunity to comply with the Act, and the filing date is easily ascertainable." Id. it is compelling to note that Midland asks this Court to take judicial notice of the docket in the Lawsuit. [D.E. 10 at 2]. The Court will also notice that as of the date of the filing of this response, Midland has still failed to dismiss the Lawsuit despite knowing that it was filed in violation of the FDCPA.

If the Court were to adopt Midland's position, it is conceivable that debt collectors could go around filing lawsuits against consumers in various jurisdictions and get away with it so long as the consumer is not served. This way, the lawsuits show up on the consumer's credit reports and public records history and the consumer may be far more likely to pay the debt so as to try and clear the lawsuits from their history. Such a result would be absurd and is not supported by the intent of Congress.

After all, what is Midland really arguing? That it should be given a pass because it only filed a case against Plaintiff in the wrong venue? Plaintiff clearly knows about the Lawsuit and it will be on her personal history as a matter of public record. If Midland were to refile in the proper jurisdiction—Plaintiff would have two cases listed against her in the public records. The cases cited are attempts to give the consumer more protection by extending the statute of limitations—not to give the debt collector a pass for violating the FDCPA. Many courts have disagreed with Serna. *See* Zenon v. Palisades Collection, LLC, 2008 WL 506231, at *1 (M.D. Fla. 2008) ("The alleged misconduct ... and the misrepresentation of Plaintiff's debt culminated in the filing of the lawsuit. The one year limitation period began [to] run when the lawsuit was filed."); Cooper v. F.A. Mgmt. Sols., Inc., 2007 WL 4326800, at *4 (M.D. Fla. 2007)(Plaintiff was required to file suit within one year after the underlying action was filed.); Oglesby v. Rotche, 1993 WL 460841, at *10 (N.D.III. Nov. 5, 1993) (holding that a violation of § 1692i is "completed upon the filing of an action in an improper venue"); Holton v. Huff, 2012 WL 1354024, at *3 (M.D. Pa. 2012)("it makes no difference that Defendants voluntarily withdrew the complaint without prejudice a week after filing it. Once Defendants filed the underlying state court action, liability attached immediately.")

Plaintiff respectfully submits that this Court follow the well-reasoned opinion in Desfassiaux which addressed Serna and is directly on point:

> This court respectfully declines to follow those decisions because, in this court's view, they cannot be reconciled with *Phillips v. Asset Acceptance, LLC, 736 F.3d 1076 (7th Cir.2013)*. *Phillips* held that, even though the debtor had not been served, the defendant debt collector could be held liable for violating the FDCPA's prohibitions against false representations and unfair practices by suing the debtor after the statute of limitations on the creditor's claim had run. As *Phillips* explained:

> [F]iling a complaint may cause actual harm to the debtor: a pending legal action, even pre-service, could be a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers. The debt collector may also use the pending legal action to pressure a debtor to pay back the debt informally, without serving the complaint—precisely the type of unfair practice prohibited by the FDCPA.

Desfassiaux v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 2015 WL 6798301, at *2 (N.D. Ill. 2015)(internal citations omitted).

**CONCLUSION**

The FDCPA is a remedial statute and should be liberally construed in favor of the consumer. By adopting Defendant's position, the Court would be limiting the protection of the FDCPA. For the reasons discussed above, Plaintiff, Janice Parson, respectfully requests this Honorable Court deny Defendants' Motion to Dismiss Plaintiff's Complaint, order Defendant to file an Answer to Plaintiff's Complaint, and grant such other relief as is just and proper.

Respectfully submitted,

/s/ Yechezkel Rodal

Yechezkel Rodal, Esq.
FBN: 091210
LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, FL 33316
Telephone: (954) 523-4357
Facsimile: (954) 581-2786
E-Mail: chezky@floridaloanlawyers.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on March 14, 2016 with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Cory Eichhorn, Esq.
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Counsel for Defendant
Service by CM/ECF

LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, FL 33316
Telephone: (954) 523-4357
Facsimile: (954) 581-2786

/s/ Yechezkel Rodal
Yechezkel Rodal, Esq.
FBN: 91210
E-Mail: chezky@floridaloanlawyers.com